IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA WADE, | ) | CASE NO. 1:11CV489 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Brenda Wade ("Wade") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Doc. 1. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

Wade challenges the Commissioner's determination that she was not disabled because she had the Residual Functional Capacity ("RFC") to perform her past relevant work as a bench assembler. For the following reasons, the final decision of the Commissioner should be AFFIRMED.

**I. Procedural History**

On November 13, 2006, Wade filed applications for DIB and SSI, alleging a disability onset date of November 10, 2006. Tr. 73-83, 100. Wade claimed that she was disabled due to a heart condition and carpal tunnel syndrome. Tr. 44, 47. The state agency denied Wade's claims initially on April 2, 2007 (Tr. 40-41) and on reconsideration on June 7, 2007. Tr. 42-43. On July 2, 2007, Wade filed a written request for a hearing (Tr. 65), and on July 10, 2009, a hearing

1

was held before Administrative Law Judge Mark M. Carissimi (the "ALJ"). Tr. 16-39. On August 20, 2009, the ALJ issued a decision, finding that Wade was not disabled because she could perform her past relevant work as a bench assembler. Tr. 14-15. On February 7, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. The ALJ's Determination

In his August 2009 decision, the ALJ found that Wade had not engaged in substantial gainful activity since November 10, 2006, her alleged onset date. Tr. 12. The ALJ found that Wade had the following severe impairments: ischemic heart disease - status post stent placement and carpal tunnel syndrome. Tr. 12. He determined that Wade did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. Tr. 13. The ALJ then determined that Wade retained the RFC to perform a range of sedentary work subject to the following non-exertional limitations: frequent handling and fingering; avoid exposure to temperatures extreme; and avoid concentrated exposure to vibrating equipment. Tr. 13. The ALJ concluded that Wade was not disabled because she was able to perform her past relevant work as a bench assembler. Tr. 14. Wade does not dispute the ALJ's findings under steps one through three of the five-step sequential evaluation,[1] or the ALJ's RFC determination. Doc. 12, p. 2. However, Wade does dispute the ALJ's finding that at step four that she was able to perform her past relevant work as a bench assembler. Doc. 12, p. 2.

---

[1] The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR 404.1520(a) and 416.920(a). If a claimant is determined not to be disabled at any step, the analysis does not proceed to the next step. The claimant has the burden of proving that she is disabled at the steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden of proof shifts to the SSA at step five. *Id.*

### III. Evidence

Because Wade only challenges the ALJ's determination that she could perform her past relevant work as a bench assembler, the Court will limit its summary of the evidence to the relevant vocational evidence that is at issue.

Wade was born on March 9, 1949, and was 60 years old at the time of the administrative hearing. Tr. 20. She has a high school education (GED). Tr. 110. At the time of the hearing, Wade rented a room at a rooming house. Tr. 30.

**A. Wade's Testimony**

Wade appeared with counsel and testified at the hearing before the ALJ. Tr. 16-39. She testified that she last worked at a place called Plastic Works from 2000 to 2003. Tr. 20-21. At that job, she either ran a machine or packed carts. Tr. 21. Wade testified that she was required to stand at that job for eight hours a day. Tr. 22. The heaviest weight she lifted was ten pounds. Tr. 22. Wade also testified that the job required her to continuously use her hands. Tr. 23.

The ALJ then inquired about Wade's employment at Team America as a bench assembler. Tr. 23. Wade testified that she performed that job full-time. Tr. 24. Her testimony as to how long she worked at Team America was inconsistent.[2] She started by doing assembly work for an hourly wage and was later moved to gasket assembly where she was paid on a piecework basis, i.e., based on the number of assembled gaskets she produced. Tr. 24, 38. Wade testified that she was able to sit down at this job, that she did not have to stand/walk for more than two hours, and that she did not have to lift more than nine pounds. Tr. 24-25. She stated that the work was "kind of hard" and that "[w]e had to tape up our fingers" to put the gaskets

---

[2] At one point Wade said she worked at Team America for a couple of years (Tr. 24), and later stated it was at least a year. Tr. 25.

together. Tr. 24. She also stated that, because she had short fingers, she was given short parts to assemble, and was only occasionally given longer parts. Tr. 32. Wade stated that her employers "didn't push a lot" in terms of getting her to produce more gaskets. Tr. 37.

**B.  Vocational Expert's Testimony**

Thomas Nunberger, a vocational expert ("VE"), also testified at the hearing. Tr. 33-38. The ALJ asked the VE to describe Wade's past relevant work. The VE testified that Wade's past relevant work included the following jobs: inspector and hand packager, which are both unskilled positions at light exertional levels; a bench assembler, which is generally an unskilled position performed at a light exertional level, but was performed by Wade at a sedentary level; and food preparation/sandwich maker, which is generally an unskilled position performed at a medium exertional level, but was performed by Wade at a light exertional level. Tr. 33-34.

In a hypothetical, the ALJ asked the VE whether a person could perform any of Wade's past relevant work if the individual had the same vocational factors as Wade and limited to sedentary work with the following additional limitations:

> [C]ould frequently climb ramps and stairs. They could not climb ladders, ropes or scaffolds.  They would have to avoid the extreme cold, extreme heat and concentrated exposure to any kind of vibrating equipment.

Tr. 34-35. The VE stated that the individual could perform the past relevant work of a bench assembler, as Wade performed it. Tr. 35. In a second hypothetical, the ALJ added a limitation that the individual would be limited to frequent bilaterally handling and fingering. Tr. 35. The VE responded that reaching, handling and fingering are all frequent bilaterally for the bench assembly job, and stated that the individual could still perform the job. Tr. 35. In a third hypothetical, the ALJ further limited the individual to only occasional bilateral handling and fingering. Tr. 35. The VE responded that such an individual would be unable to perform any of

4

Wade's past relevant work. Tr. 35. In response to questioning by counsel regarding Wade's job as a bench assembler, the VE testified that being paid on a piecework basis means that an individual will not get paid if that individual does not produce. Tr. 37.

**C.    Earnings Records**

Wade's earnings records show that, in 1999, she earned a total of $8,439.88 for work at two different jobs: $5,469.88 while working as a bench assembler at Team America of Ohio, and $2,970.00 while working as a packer in a factor for Crown Services, Inc. Tr. 91-92, 98, 118.

### IV.  Standard for Disability

The ALJ is required to follow a five-step sequential analysis in order to determine whether a claimant meets the statutory standard for disability. *See* 20 C.F.R. § 404.1520(a). The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L.

Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### V. Law & Analysis

**A. Standard of Review**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or, indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B.     Substantial Evidence Supports the ALJ's Determination that Wade Could Perform Her Past Relevant Work as a Bench Assembler**

Wade argues that the ALJ erred in finding that she could return to her past relevant work as a bench assembler. Specifically, Wade claims that her past job as a bench assembler is not past relevant work because her earnings at that job were not enough for the job to qualify as substantial gainful activity. Doc 12, pp. 5-6. In the alternative, Wade argues that, even if the bench assembler position is past relevant work, her RFC limitations exceeded the requirements for performing this job. Doc. 12, p. 6. Each of these arguments is without merit.

**1.     Substantial Evidence Supports the ALJ's Finding that Wade's Employment as a Bench Assembler is Past Relevant Work**

The ALJ resolved Wade's claim at step four of the sequential analysis. In doing so, he relied upon the testimony of the VE to find that Wade was capable of performing her past relevant work as a bench assembler as she actually performed it. Tr. 14. The evidence supports the ALJ's determination that Wade's employment as a bench assembler is past relevant work.

To qualify as past relevant work, the work must have been performed in the last 15 years, have been performed long enough for the claimant to have learned to do it, and qualify as "substantial gainful activity" ("SGA"). 20 C.F.R. § 404.1560(b)(1). Under the regulations, SGA is "work activity that is both substantial and gainful." 20 C.F.R. 404.1572. Substantial work activity is "work activity that involves doing significant physical or mental activities" and gainful work activity is work activity done "for pay or profit." *Id.* In addition, the regulations provide that "generally," earnings are the primary factor in determining if work constitutes SGA. 20 C.F.R. § 404.1574. The regulations use earnings guidelines to assist in determining whether a claimant's past work constituted SGA. *Id.* Earnings of at least $500.00 per month between January of 1990 and June of 1999 are generally considered to constitute SGA. 20 C.F.R. §

404.1574(b)(2). For the period July 1999 through December 2000, earnings of at least $700.00 per month are generally considered to constitute SGA. 20 C.F.R. § 404.1574(b)(2).

In this case, Wade testified that she worked at Team America as a bench assembler for at least a year. Tr. 25, 38. Earnings records reveal that she worked at Team America in 1999 and that her earnings at that job in 1999 were $5,469.88. Tr. 92. Wade contends that her work as a bench assembler cannot be considered SGA because her earnings from that job averaged only $455.82 per month ($5,469.88 divided by 12), which is below the wage thresholds set forth in the guidelines. Doc. 12, p. 6.

As noted by the Commissioner, this argument is flawed because Wade's earning records show that she actually worked at two jobs in 1999, Crown Services as well as Team America. Tr. 91-92. She earned $5,469.88 at Team America and $2,970.00 at Crown Services. Tr. 91-92. There is no evidence in the record that she performed these jobs simultaneously[3] so it appears that, during some part of 1999, she worked at Team America and, during another part of that year, she worked at Crown Services.[4] Tr. 91-92. Thus, Wade's calculation of her monthly earnings appears to be flawed because her 1999 earnings from Team America should be divided by a number less that 12 to arrive at the monthly average. Wade, who has the burden of proof at step four, has failed to establish that, based on her earnings alone, the ALJ erred in finding that her job as a bench assembler was past relevant work.[5]

More importantly, Wade's argument fails to acknowledge that the regulations do not establish a bright line rule regarding what constitutes SGA. *See* 20 C.F.R. § 404.1574. Rather,

---

[3] In fact, Wade testified that her job at Team America was a full-time one. Tr. 24.

[4] As noted above, Wade's testimony as to how long she worked at Team America was inconsistent.

[5] The Commissioner also argues that Wade's earnings at both Team America and Crown Services can be aggregated for 1999 and that, once combined, her monthly earnings were above the threshold wage level. Doc. 13, p. 5. However, the Commissioner has failed to cite to any regulations or case law on aggregating jobs to meet the threshold wage level for SGA.

8

they set a level of earnings that presumptively constitute SGA. 20 C.F.R. § 404.1574(b)(2); *see also Koss v. Schweiker,* 582 F. Supp. 518, 521 (S.D.N.Y.1984) (noting that § 404.1574 earnings guidelines are not mandatory). Indeed, § 404.1574(b) specifically provide for the consideration of information other than earnings "if there is evidence indicating that [the claimant] may be engaging in substantial gainful activity **or that [the claimant is] in a position to control when earnings are paid to [the claimant] or the amount of wages paid to [the claimant]**". 20 C.F.R. § 404.1574(b)(3)(ii)(A) (emphasis added). Other information that may be considered includes whether the work performed was "comparable to that of unimpaired people in [the claimant's] community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work." 20 C.F.R. § 404.1574(b)(3)(ii)(A).

Here, Wade was in a position to control the amount of wages she was paid and her testimony also establishes that the work she did was comparable to work performed by unimpaired people. Wade testified that she was paid on a piecework basis at her job as a bench assembler, meaning that she was paid based on the number of gaskets she produced, instead of receiving an hourly wage. Tr. 36-38. The more gaskets Wade assembled, the more money she was paid. Tr. 36-38. Wade conceded that her employers "didn't push a lot" in terms of getting her to produce more gaskets. Tr. 37. Thus, Wade controlled the amount she was paid and, under the regulations, the ALJ reasonably relied upon the VE's testimony that Wade's past work as a bench assembler constituted past relevant work. Tr. 14, 34. Moreover, her testimony indicated that her job duties as a bench assembler were demanding (she stated that the work was "kind of hard") and the work was comparable to work performed by unimpaired people in the community (she testified that "we had to tape our fingers" to assemble the gaskets). Tr. 24. Considering the

testimony of both Wade and the VE, the ALJ's determination that Wade's job as a bench assembler constituted past relevant work is supported by substantial evidence.

### 2. Substantial Evidence Supports the ALJ's Determination that Wade is Capable of Performing Her Past Relevant Work as a Bench Assembler as She Actually Performed the Job

Wade also argues that the evidence does not support a finding that she is capable of performing the job of bench assembler as she actually performed it considering her RFC. At step four of the sequential analysis, a claimant will be found not disabled if the claimant is capable of performing past relevant work as it was actually performed or as it is generally performed in the national economy. 20 C.F.R. §404.1560(b)(2). Here, the ALJ found that Wade is capable of performing her past relevant work as a bench assembler as she actually performed it. Wade claims that the ALJ "unreasonably relied upon the testimony of the vocational expert" to reach this conclusion. Doc. 12, pp. 6 - 7. This argument is meritless.

The VE testified that a hypothetical person who was limited to sedentary work and frequent handling and fingering could perform Plaintiff's past work as a bench assembler as it was actually performed. Doc. 12, p. 7. However, based upon pure speculation, Wade asserts that the VE relied on the job description of how the bench assembler job is generally performed as set forth in the Dictionary of Occupational Title's ("DOT"), which provides that the job of assembler requires frequent handling and fingering, and not on how Wade actually performed the job, which she suggests was with constant handling and fingering. Doc. 12, p. 7. Contrary to this assertion, the VE did not testify that his assessment was based on the DOT job description. Tr. 35; *see also* DOT, Assembler, Small Products I, #706.684-022 (4th Ed. 1991). In fact, the VE did not even mention the DOT during this part of his testimony. Tr. 35. Instead, the VE listened to Wade's testimony regarding how she performed her past jobs and based his opinions

10

on her testimony.  Wade has failed to establish otherwise.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving . . . that she is precluded from performing her past relevant work.").

Wade also argues that her testimony demonstrates that she had to constantly, rather than only frequently, use her hands to perform her bench assembler job and, as a result, she could not perform this job now based on her RFC, which limits her to frequent handling and fingering. Doc. 12, p. 7.  As with her interpretation of the VE's testimony, Wade is again engaging in unsupported speculation.  Wade never testified that she used her hands constantly at the bench assembler job.  Tr. 20-39.  In contrast, she specifically testified that one of her other jobs, as an inspector/hand packager, required constant and continuous use of her hands.  Tr. 23.  If Wade's bench assembler job really required constant use of her hands, she could have testified that she constantly used her hands, but she did not.  Further, upon questioning by her attorney, Wade admitted that her employers did not "push" her to assemble more parts than what she was already assembling, which also evidences a lesser use of her hands.  Tr. 37.  Thus, the ALJ reasonably relied upon the VE's testimony to find that Wade could perform her past relevant work as a bench assembler, as she performed the job, with frequent handling and fingering.  Accordingly, the ALJ's decision that, based on her RFC, she could perform her past relevant work as a bench assembler as she had performed it, is supported by substantial evidence.

## VI. Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Brenda Wade's applications for DIB and SSI should be AFFIRMED.

Dated: January 6, 2012

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).